*54 OPINION OF THE COURT
Robert F. Julian, J.
Petitioner, Bonnie Orendorff, filed a complaint with the New York State Division of Human Rights alleging gender discrimination by the respondent Benevolent and Protective Order of Elks Lodge No. 96.
This CPLR article 78 proceeding raises for review the adequacy of a determination and order after investigation (determination) by the New York State Division of Human Rights (DHR) which did not accurately advise the petitioner of the correct determination by DHR, did not accurately set forth the basis for the determination, and did not advise the petitioner accurately regarding her legal rights. The specific questions raised are:
(1) Was it arbitrary and capricious for the DHR to advise the petitioner that its determination was based on a finding of no probable cause after an investigation, when in fact its finding was that DHR did not have jurisdiction and no investigation was conducted?
(2) Does the DHR have a duty to clearly and specifically advise the petitioner that a determination dismissing a complaint is jurisdictional and not on the merits? and
(3) Did the DHR have a duty in the event of this jurisdictional dismissal to either ab initio annul the election of remedies pursuant to Executive Law § 297 (9) or advise the petitioner that she is entitled to request such a determination?
Discussion
Facts
Petitioner, a female, was denied membership by the Benevolent and Protective Order of Elks Lodge No. 96 (Rome Elks) on January 4, 2001. The lodge has never had a female member. Three months and two weeks later, on April 19, 2001, she brought a complaint against the Elks before DHR. On June 19, 2001 the DHR dismissed the complaint issuing a determination and order after investigation. In its determination, the DHR stated that the dismissal was based on a finding of no probable cause:
“After investigation, and following review of related information and evidence with named parties, the Division of Human Rights has determined *55 that insofar as Respondent Benevolent and Protective Order of Elks Lodge #96 is concerned there is No Probable Cause to believe that the said respondent has engaged in or is engaging in the unlawful discriminatory practice complained of. This determination is based on the following:
“Respondent is incorporated under the benevolent orders law and is therefore distinctly private and not a place of public accommodation.”
Petitioner, by letter of June 21, 2001 to the DHR Regional Director Ray F. Torres, requested a reconsideration of the determination. In response the DHR general counsel by letter dated July 5, 2001 restated the complaint was dismissed for no probable cause. The general counsel advised petitioner of her right to judicial review pursuant to Executive Law § 298 but made no mention that the dismissal was in fact for lack of jurisdiction or that the petitioner had the right to request an annulment of the election of remedies.
This article 78 proceeding was commenced on August 17, 2001 seeking review of the DHR’s determination, seeking a declaration that Executive Law § 292 (9) is unconstitutional and seeking a review of the Rome Elks decision to deny petitioner membership.
During oral argument, counsel for the DHR repeated on the record several times that the dismissal was jurisdictional.* Counsel argued that the basis for his position that the dismissal was jurisdictional was the privacy exemption for benevolent orders which deprived the DHR of jurisdiction over benevolent orders.
*56 Since The DHR Does Not Have Jurisdiction Dismissal For “No Probable Cause”
Was Arbitrary And Capricious
Executive Law § 292 (9) creates an irrebuttable presumption that “a corporation incorporated under the benevolent orders law or described in the benevolent orders law but formed under any other law in this state * * * shall be deemed to be in its nature distinctly private.” Because of that exemption the Rome Elks cannot have violated the antidiscrimination provisions of the Human Rights Law and therefore the DHR did not have jurisdiction over the Rome Elks. On the other hand, the question of whether or not the DHR had jurisdiction in this case is legitimately within the determinative powers of the DHR but is subject to article 78 review (Matter of Staten Is. Alliance for Mentally Ill v Mercado, 273 AD2d 36 [1st Dept 2000]; Cowen v Lily Dale Assembly, 44 AD2d 772 [4th Dept 1974]).
Subject matter jurisdiction cannot be created by waiver or estoppel:
“More importantly in the case before us, we recognize that when a court lacks subject matter jurisdiction it may not acquire it by waiver (see, Matter of Rougeron, 17 NY2d 264, 271, cert denied sub nom. Rougeron v Rougeron, 385 US 899). ‘A judgment or order issued without subject matter jurisdiction is void, and that defect may be raised at any time and may not be waived’ (Editorial Photocolor Archives v Granger Collection, 61 NY2d 517, 523).” (Morrison v Budget Rent A Car Sys., 230 AD2d 253, 260 [2d Dept 1997].)
The DHR is empowered to hear complaints of violations of the laws prohibiting discrimination based on gender, which was petitioner’s claim in the case at bar. (Matter of Rougeron, 17 NY2d 264, 271 [1966]; Barnaby v Barnaby, 226 AD2d 860 [3d Dept 1996].) Prima facie, the DHR made a ruling dismissing this case finding no probable cause rather than dismissing this case based on a lack of jurisdiction. This ruling further suggests to petitioner that the act of proceeding before the DHR cannot be considered a nullity. Hence, even though the DHR did not have jurisdiction, whatever protections the statute accords to someone who brings a complaint before the DHR, including any protections accorded a complainant over whose complaint the DHR does not have jurisdiction, should adhere to this petitioner.
*57 DHR admits that it did not have jurisdiction; the statute provides it does not have jurisdiction; and jurisdiction cannot be created by waiver. The acts of the national Elks in prohibiting gender discrimination would not constitute any basis for the DHR to maintain jurisdiction over a cause of action sounding in the antidiscrimination portion of the Executive Law against the Rome Elks.
Because DHR did not have jurisdiction over the case, the action of the DHR in issuing an apparently merit-based determination was arbitrary and capricious. DHR was required to dismiss for lack of jurisdiction, which constitutes and is an annulment of the election of remedies, and it must be required so to determine. Petitioner was entitled to be advised by DHR that the real basis for the dismissal was lack of jurisdiction so she could pursue other remedies.
Election of Remedies
Court or administrative, not both.
The first sentence of Executive Law § 297 ( 9) (Human Rights Law) provides that a person discriminated against has a right to bring the matter to court, and request any appropriate relief: “Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, * * * and such other remedies as may be appropriate * * * unless such person had filed a complaint hereunder * * *” (emphasis added).
The petitioner could not simultaneously bring a complaint to the DHR and commence an action for the same relief simultaneously. (Cox v Carey, 90 Misc 2d 688 [Sup Ct, Albany County 1977].) Section 297 (9) of the Human Rights Law provides:
“No person who has initiated any action in a court of competent jurisdiction or who has an action pending before any administrative agency under any other law of the state based upon an act which would be an unlawful discriminatory practice under this article, may file a complaint with respect to the same grievance under this section or under section two hundred ninety-six-a of this article.”
The petitioner argues that the complaint to the DHR constituted a required prior administrative procedure through which it must have passed in order to be eligible to file the article 78. The court was not swayed by the petitioner’s arguments and the court concludes that the mandate of the first sentence of *58 the statute was ignored as it directs that a complainant can go to court unless he/she goes to the DHR. Petitioner’s argument is entirely based on law concerning complaints an aggrieved has concerning administrative agency action, concerning which it is indeed necessary to go through the internal review process before seeking article 78 relief. (Matter of Hurwitz v New York City Commn. on Human Rights, 142 Misc 2d 214 [Sup Ct, NY County 1988].) This does not include complaints about third parties brought to an administrative agency. When the administrative proceeding is not mandatory, the utilization of the administrative remedy does not toll the statute of limitations or constitute a prerequisite for an article 78 proceeding. (Roufaiel v Ithaca Coll., 241 AD2d 865 [3d Dept 1997].)
The respondents, in support of their position that the statute of limitations was not tolled, argues that the article 78 proceeding could have gone forward despite the pendency of the DHR proceeding, equally ignoring the statute from another perspective. They cite, e.g., Matter of Asim Drugs v Perales (183 AD2d 893 [2d Dept 1992]), which in regard to a determination by the Department of Social Services (DSS) discontinuing plaintiffs participation in the Medicaid program in this case, the court held that plaintiff could have pursued a federal court action as well as the CPLR article 78 relief. This is not instructive in the instant case: here the remedy of a state court action was expressly precluded by statute given the pendency of the administrative proceeding.
The further problem with this theory is the general prohibition against splitting causes of action (Craig-Oriol v Mount Sinai Hosp., 201 AD2d 449 [2d Dept 1994]). Since petitioner’s needs could have been entirely remedied administratively (had the agency jurisdiction), any attempt to bring a contemporaneous article 78 proceeding would have involved splitting the cause of action.
The statute provides a clear election of mutually exclusive remedies: complainants are free to go to court, but they can’t if they choose the administrative remedy; and they can’t choose the administrative remedy if they have already gone to court. They must choose one or the other, not both. (Matter of James v Coughlin, 124 AD2d 728 [2d Dept 1986]; Legg v Eastman Kodak Co., 248 AD2d 936 [4th Dept 1998]; Matter of Universal Packaging Corp. v New York State Div. of Human Rights, 270 AD2d 586 [3d Dept 2000].)
There are situations in which a federal court action is neither precluded by nor precludes an administrative proceeding; *59 that is where there is a distinct federal remedy concerning which DHR would have no jurisdiction. (Kordich v Povill, 244 AD2d 112 [3d Dept 1998].) Kordich, however, recites the concept of mutually exclusive remedy and really finesses the issue, because the DHR had dismissed the case for administrative convenience so that the matter would be fully litigated in the federal forum. Kordich doesn’t address the issue of mutually exclusive remedies head on, and simply stands for the general proposition of exclusivity.
The petitioner brought a complaint to the DHR. The DHR issued an order that the case was without merit, whereas, based upon its concessions in this litigation, the proper determination was a lack of jurisdiction. Petitioner couldn’t have proceeded in court during the period the DHR was considering her complaint.
Implications of nonmerit dismissal.
The statute recognizes that the administrative remedy may become unavailing for reasons other than based on the merits of the complaint (Executive Law § 297 [9]): “[w]here the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.”
When the Division dismissed the complaint on the grounds of administrative convenience a subsequent action can be maintained: again, see Kordich v Povill (244 AD2d 112 [3d Dept 1998]; Legg v Eastman Kodak Co., 248 AD2d 936 [4th Dept 1998]).
The sum and substance of this whole concept is set forth in detail in Kordich (at 115-116):
“A review of cases decided prior to the 1997 amendment of Executive Law § 297 (9) discloses that the courts perceived administrative convenience dismissals as a means by which the SDHR would allow State claims to proceed to Federal court, thereby avoiding duplicative proceedings and conserving scarce State resources (see, Matter of AMR Servs. Corp. v New York State Div. of Human Rights, supra; Columbian Rope Co. v New York State Div. of Human Rights, 174 AD2d 1033). The amendment of Executive Law § 297 (9) in 1997 expanded the bases upon which the SDHR may dismiss an administrative complaint for the pur *60 pose of allowing judicial action (see, L 1997, ch 374, eff Aug. 5, 1997). The statute now provides that where the SDHR ‘has dismissed [the] complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, [the complainant] shall maintain all rights to bring suit as if no complaint had been filed with the SDHR’ (Executive Law § 297 [9]).
“The reference to the annulment of the election of remedies implies that, prior to the amendment, a complainant’s right to seek review of a discrimination claim in State court was circumscribed. This is evidenced by a legislative memorandum accompanying the amendment in which it is noted that, under prior law, the administrative convenience dismissal was utilized to enable a complainant to have a State law discrimination claim heard pendent to a Federal claim over which the SDHR has no jurisdiction (see, Senate Mem in Support, 1997 McKinney’s Session Laws of NY, at 2364). The memorandum further states that, under prior law, ‘where a complainant wishfed] to pursue his or her case in court for reasons unrelated to parallel federal remedies, the [SDHR] [was] unable to dismiss the case’ (id,., at 2364-2[3]65). Significantly, the memorandum concludes that: ‘The proposed legislation would remedy these situations, so that the [SDHR] could dismiss cases by allowing dismissal for untimeliness or annulling the election of an administrative remedy where the complainants have the necessity or means to be in state court’ (id., at 2365 [emphasis supplied]). Thus, under the current version of Executive Law § 297 (9), the SDHR may dismiss an administrative complaint for the very purpose of allowing a complainant to annul his or her election of remedies and pursue an action in State court as plaintiff wishes to do here.”
Executive Law § 297 (9) additionally provides as follows regarding annulment of the election:
“At any time prior to a hearing before a hearing examiner, a person who has a complaint pending at the division may request that the division dismiss the complaint and annul his or her election of remedies so that the human rights law claim *61 may be pursued in court, and the division may, upon such request, dismiss the complaint on the grounds that such person’s election of an administrative remedy is annulled.”
This sentence is simply a grant to a petitioner; it does not restrict annulments to cases in which the request has been made.
This petitioner has never had a hearing; DHR certainly had personal jurisdiction over the parties. Its dismissal was incorrect based on “no probable cause,” because it did not have jurisdiction according to its own counsel. Rather, DHR should have found that it did not have jurisdiction and issued an annulment of the election of remedies, which is the remedy this court will order. Her election certainly was annulled in fact; they found she had no remedy at DHR to elect; what could be more annulling. While petitioner could have asked for such an annulment and perhaps can be construed as having done so by filing this article 78 against the DHR and Elks together, in the court’s view, that’s a stretch. Moreover, DHR, in its “determination and order after investigation” dated June 19, 2002 and the subsequent letter from General Counsel Lopez dated July 5, 2001, advised the petitioner of the wrong basis for the dismissal and failed to advise her of the right to have the election of remedies annulled. It was not until the filing of responsive briefs and oral argument in this matter that it was conceded that the decision of DHR was not on the merits but jurisdictional, entitling the petitioner to an annulment of the election of remedies pursuant to the Executive Law.
Pierre v Chemical Bank (960 F Supp 21 [ED NY 1997]) holds that an administrative proceeding brought before a human rights board did not constitute a waiver of the complainant’s right to go to court when the board lacked jurisdiction over the subject matter. In eifect, Judge Weinstein annulled the election and sustained the action.
In its decision, the DHR did alert the petitioner of her rights to pursue review of that decision in Supreme Court. If DHR is going to so advise a petitioner, it should also have advised the petitioner of her right to ask for an annulment despite its failure to properly order that remedy. DHR should be ordered to do so, and it was additionally arbitrary and capricious to cite one remedy but ignore another one to the petitioner. It was additionally arbitrary and capricious to find “no probable cause” in a case in which it admittedly had no jurisdiction, rather than annulling the election. Its determination should therefore be set aside and it should be ordered to issue a determination *62 that the election of remedies is annulled inasmuch as it does not have jurisdiction over the complaint.
The Human Rights Law is to be construed liberally to accomplish the purposes enumerated therein (see Matter of Arnot Ogden Mem. Hosp. v State Div. of Human Rights, 67 AD2d 543, 546 [3d Dept 1979]; Matter of New York State Div. of State Police v McCall, 98 AD2d 921 [3d 1983]).
The Article 78 Proceeding Against the Elks
In the alternative, petitioner seeks, by CPLR article 78, a determination that the Elks Lodge did not follow the national bylaws and requirements. This part of the application is premature and should be dismissed without prejudice. It cannot be brought until the agency properly dismisses the claim (see Legg v Eastman Kodak Co., 248 AD2d 936 [4th Dept 1998] [where one petition was dismissed because the action was commenced several weeks before the actual dismissal (for administrative convenience) was made]).
Executive Law § 297 (9):
“[I]f a complaint is so annulled by the division, upon the request of the party bringing such complaint before the division, such party’s rights to bring such cause of action before a court of appropriate jurisdiction shall be limited by the statute of limitations in effect in such court at the time the complaint was initially filed with the division.”
In this case the complaint was filed with the division within the four-month statute of limitations for a CPLR article 78 proceeding, the determination having been made January 4, 2001, and the DHR complaint having been commenced on April 19, 2001 (about three months and two weeks). The pendency of the administrative proceeding tolled the statute of limitations until DHR properly dealt with it. It has not yet done so. It issued a facially merit dismissal (“no probable cause”) which was obviously arbitrary and capricious since it had no jurisdiction. Once the DHR issues an annulment of remedies, the statute of limitations will have run the time from January 4 until April 19, and the petitioner will have several weeks left for the commencement of a timely article 78 against the Elks.
Conclusion
It was arbitrary, capricious and an abuse of discretion for the DHR not to advise the petitioner that the dismissal of the complaint was based on lack of jurisdiction and that either the *63 election of remedies was annulled or that the petitioner had the right to request such a determination from the DHR.
This court remands this matter back to the DHR and orders it to immediately notify the petitioner by a proper determination that it is dismissing the matter because of lack of jurisdiction and that it will annul the election of remedies.
The article 78 proceeding against the Elks is dismissed without prejudice as premature.

 During oral argument, counsel for DHR stated at page 7 “we dismissed the complaint for lack of jurisdiction before we made any kind of investigation, and we certainly made no findings of fact with respect to the Elks Lodge.” This is inconsistent with the determination and order after investigation in which the DHR advised the petitioner it was finding “no probable cause for the complaint after investigation and following review of related information and evidence with named parties.” At page 54, counsel for DHR acknowledges that the notice of determination was incorrect both as to its conclusion and the basis therefor. “The Division, I think its pretty well recognized, but I just want to make it clear, dismissed this matter, even though the order dismissing Ms. OrendorfFs complaint says no probable cause, for lack of jurisdiction. The Division made no findings whatsoever with respect to discrimination, and drew no conclusions from the papers submitted by the parties after the filing of Ms. OrendorfFs complaint. The issue was solely the fact that the — was the fact that the benevolent order exemption.”